UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | ) Case No. 18-11570-B-13 |
| | ) |
| ETHAN NICOLAS APARICIO, | ) DC No. MHM-2 |
| | ) |
| Debtor. | ) |
| | ) |

**MEMORANDUM DECISION**

<u>**INTRODUCTION**</u>

Nearly ten years after the dissolution of her 18 year marriage to Ethan Aparicio, Olivia (Aparicio) Reyes applied to the Superior Court of California for the County of Tulare ("Superior Court" or "State Court") thereby renewing the dissolution judgment which, in part, incorporated a marital settlement agreement ("MSA"). Under the MSA, Ethan was to pay Olivia for support, equalization, home repair, and expenses for a business they both owned and operated during marriage.

Ethan disputes his liability under the judgment claiming, among other things, the MSA is partially invalid and that he is entitled to credits against the judgment for his support payments, "in kind" payments for their child, and an offset because Olivia sold the business. Ethan also concedes that he owes Olivia for specific items.

Before the State Court ruled on his challenges to the judgment, Ethan filed this Chapter 13 bankruptcy case. The Chapter 13 Trustee moved to dismiss the case because the amount Olivia claims is due under the judgment exceeds the eligibility

limits for unsecured debts under 11 U.S.C. § 109(e).[1] Ethan contends Olivia's claim is unliquidated and largely should not be counted as "debts" included in the eligibility determination. This court disagrees, and finds Ethan ineligible for Chapter 13 relief at this time.

## FACTS

Ethan and Olivia Aparicio were married for 18 years. They resided in Porterville, Tulare County, California and have one child. Ethan was an exclusive property and casualty insurance agent for Allstate Insurance.[2] Sometime during the marriage, Olivia became the exclusive agent and Ethan became a personal financial representative for Allstate Financial Services, LLC.

In February 2007, Ethan filed a marital dissolution proceeding in the Superior Court. Ethan prepared a draft agreement containing terms to settle support and property division issues. Olivia's attorney prepared a MSA which was incorporated into a dissolution judgment on August, 10, 2007.

*Pertinent MSA Provisions.*

The MSA had many provisions, many of which are not in dispute. However, the components that are in dispute are summarized here.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, all "Civil Rule" references are to the Federal Rules of Civil Procedure, and all "LBR" or "Local Rules" references are to the Local Rules for the United State Bankruptcy Court for the Eastern District of California.
[2] For ease of reference, this memorandum will refer to the litigants as "Ethan" and "Olivia." No disrespect is intended.

_Child Support._ Ethan agreed to pay child support until their child was 18.

_Spousal Support._ Ethan agreed to pay spousal support of $2,000.00 per month. The parties agreed to end the spousal support by stipulation dated June 7, 2011.

_Business Expenses._ Olivia, instead of maintaining the property and casualty business, elected to return to school to become a dental hygienist. The parties agreed that Olivia's exclusive agency would be transferred to Ethan in February 2011. Until then, and effective January 2008, Ethan was required to pay salaries of staff, office insurance, a telephone bill, lease expenses and office supplies.

_Home Repairs._ Ethan agreed to pay to paint the interior and exterior of the family home in Porterville, and install both new carpet and a new composition roof. He also agreed to pay for the repair of a wood fence in the backyard. These tasks were to be completed three months after the State Court entered the dissolution order.

_Equalization Payment._ Ethan agreed to pay Olivia a community property equalization payment of $25,000.00 on or before February 2009.

Over the next ten years, Olivia and Ethan's child reached 18, Olivia remarried and moved to Florida, and Ethan moved to Bakersfield, Kern County, California. Except for the stipulation terminating spousal support in June 2011, neither Olivia nor Ethan returned to the Superior Court to either enforce the terms of the MSA or to ask for relief from the order. Just before the

1  judgment incorporating the MSA was about to expire, Olivia
2  pursued her rights.

3

4  *Olivia's Application to Renew the Dissolution Judgment.*

5      In July 2017, Olivia filed an application for renewal of
6  the dissolution judgment with the Superior Court. Olivia stated
7  that Ethan paid some but not all of the child support under the
8  MSA but still owed approximately $108,000.00 in child support.
9  She also stated that contrary to the MSA, Ethan paid no spousal
10 support, business expenses, home repair costs, nor the
11 equalization payment. In sum, Olivia stated that Ethan owed
12 $541,631.00 in unpaid principle and $391,513.00 in interest for
13 a total owed of approximately $933,000.00.

14     Ethan hired counsel who filed a Motion to Vacate Renewed
15 Judgment in October 2017.[3] In support of his motion, Ethan filed
16 a lengthy declaration, which is a part of the record on this
17 motion. Where pertinent, his responses to Olivia's Application
18 to Renew the Dissolution Judgment are summarized here.

19     <u>Child Support.</u> Ethan conceded that approximately $42,000.00
20 was owed for unpaid child support, but he also claims that
21 between July 2012 and June 2013, he paid that support "in kind."
22 Ethan stated that he paid for an automobile and gasoline for
23 their child. He also claims that Olivia agreed that their child
24 should have a new car and that Ethan should pay for that car in
25 lieu of support for that period. Ethan also claimed that he had
26 no obligation for child support when their child turned 18.

27

28
_____
     [3] These facts are taken from the exhibits Ethan filed in opposition to
the Chapter 13 Trustee's Motion to Dismiss (Doc. No. 32).

4

    <u>Spousal Support.</u> Ethan conceded that he owed some of the spousal support, but not the amount Olivia claimed.

    <u>Business Expenses.</u> This claim is the most sharply disputed.[4] In sum, Ethan claims that the MSA and accompanying judgment is not an accurate reflection of his and Olivia's 2007 agreement, the agreement is unconscionable and enforcing the agreement would result in Olivia Reyes' unjust enrichment.

    Ethan claims that before the MSA was signed, he and Olivia had an understanding which Ethan memorialized and gave to the attorney drafting the MSA. However, there was a drafting error. He claims that Olivia and he agreed that Olivia was to pay the salaries, office insurance and telephone bill for the insurance business since she was the exclusive agent.

    Ethan claims the MSA was also unconscionable because Olivia received all the commissions from the property and casualty portion of the insurance business through December of 2010, plus 30% of Ethan's earned commissions as a financial advisor from referrals from the property and casualty department of their insurance business. Also, Ethan claims that Olivia had the sole financial control of agency monies. Ethan says it was impossible for him to pay the expenses of the property and casualty division from only the commissions earned from the financial services division and both he and Olivia knew that. He claimed that he never did read the MSA before he signed it and that it

---

[4] In opposition to the Chapter 13 Trustee's Motion to Dismiss, Ethan offered his own declaration and the declaration of Michelle L. Hatherley-Parr who is one of Ethan's attorneys in the family law matter. Ms. Hatherley-Parr opines that the business expense claim of Olivia Reyes is "most tenuous" because the MSA is silent about how the claim was to be determined or how the claim was going to be recorded. The court is not sure the relevance of how the claim was to be recorded. (See Doc. No. 31).

was not explained to him. Finally, he claims Olivia never asked him to pay the expenses, except the office rent, when he moved into the property and casualty office to manage it while Olivia was attending school beginning in February 2007.

Ethan also claims that enforcing the agreement would lead to Olivia's unjust enrichment. Ethan contends that Olivia wanted to attend hygienist school and he needed to move in to the property and casualty office and devote time managing the office. He was familiar with the business because he used to be the exclusive property and casualty agent before Olivia became the exclusive agent. While Olivia completed school, she was only at that office about one time per week and had complete control of the finances.

Alternatively, Ethan claims that if the business expenses portion of the MSA is enforced, he could not have any responsibility for anything before January 1, 2008 when he and Olivia agreed that he would take over the business. He also states that the proposed office wages portion was overstated by approximately $15,000.00 and that he paid for all office supplies through December 2010.

Home Repair Expenses. Ethan concedes that he agreed to repaint their Porterville family residence, replace the carpet and the roof. Olivia claims she expended over $26,000.00 for those services. That is undisputed. But Ethan does not agree that he should be charged over $3,000.00 to replace a back fence since he only agreed to repair the fence. He also says that because of the substantial passage of time (approximately ten

years) Olivia should be barred from recovering any fence repair costs by the Doctrine of Laches.

Equalization Payment. Ethan concedes that he did not make the equalization payment of $25,000.00 and is liable to Olivia for $25,000.00 plus interest of $21,226.03 for a total of $46,226.03.

Ethan's Claimed Offset. Olivia sold the property and casualty business to Allstate in either December 2010 or January 2011. She received, according to Ethan, monthly payments of approximately $10,000.00 over a period of one year. The total of those payments plus interest is over $200,000.00. Ethan contends that the property and casualty part of the insurance business was his book of business. Because she sold that business and did not pay Ethan, he contends he is entitled to an offset of over $200,000.00 against Olivia's claims under the MSA.

The Superior Court has yet to rule on Ethan's Motion to Vacate the Renewed Judgment. Attempts at mediation have failed. The motion is now stayed because of this bankruptcy case.

*The Bankruptcy Case.*

Ethan filed this Chapter 13 case on April 20, 2018, nearly nine months after Olivia filed the Application to Renew Judgment. Ethan's schedules list Olivia Reyes as having a claim of $867,883.38. The components of that claim includes almost $236,000.00 in domestic support obligations [child support and spousal support] and approximately $632,000.00 in claims other than domestic support obligations. Ethan also lists his offset of over $200,000.00. The only portion of Olivia's claim Ethan

lists as "contingent unliquidated and disputed" is approximately
$556,000.00 of the "business expenses" and approximately
$3,100.00 of the "home repairs."[5]

The Chapter 13 Trustee filed this Motion to Dismiss in June
2018. Ethan opposes the motion.

## CONTENTIONS OF THE PARTIES

The trustee contends that based on Ethan's schedules he is
over the debt limit by an excess of $500,000.00. The trustee
claims that Olivia's claim is both non-contingent and
liquidated. The trustee also contends that even if Ethan
disputes all or a portion of Olivia's claim, the dispute does
not affect the eligibility determination and that what may
happen after the petition was filed is not relevant. The trustee
points to not only Ethan's bankruptcy schedules, but upon review
of the debtor's opposition, it appears that even at its lowest,
the unsecured debt is well-over the Chapter 13 debt limit.

Ethan contends that because he filed a Motion to Vacate the
Renewed Judgment, Olivia's claims are unliquidated for purposes
of eligibility and cannot be readily determined. He also claims
that an extensive and contested evidentiary hearing will be
necessary in State Court before Olivia's claim can be liquidated
and that there is a substantial dispute between him and Olivia
regarding liability and the amount of the claims. Finally, Ethan
contends that a fundamental purpose of Chapter 13 will be
frustrated if the motion is granted because conversion to
Chapter 11 is too expensive and cumbersome. So, Ethan contends,

_____

[5] This amount represents the portion of the home repairs claim relating
to the repair of the back fence at the Porterville home.

1   any doubt should weigh in favor of denying the Motion to

2   Dismiss.

3

4                          **JURISDICTION**

5       The United States District Court for the Eastern District

6   of California has jurisdiction of this proceeding under 28

7   U.S.C. § 1334(b) as this is a civil proceeding arising under

8   Title 11 of the United States Code. The district court has

9   referred this matter to this court under 28 U.S.C. § 157(a) and

10  (b)(1). This is a "core" proceeding under 28 U.S.C. §

11  157(b)(2)(A).

12

13                          **ANALYSIS**

14  1. Framework for determining eligibility.

15      Eligibility for Chapter 13 relief is based upon the amount

16  of "debts" a debtor owes on the date of filing the petition.

17  Section 109(e) provides in part as follows:

18

19          Only an individual with regular income that owes,
            on the date of filing of the petition, non-
20          contingent, liquidated, unsecured debts of less
            than $394,725 . . . may be a debtor under 13 of
21          this title.

22

23  Eligibility debt limits are strictly construed. Soderlund v.

24  Cohen (In re Soderlund), 236 B.R. 271, 274 (9th Cir. BAP 1999).

25  Eligibility determinations under § 109 involve issues of

26  statutory construction and conclusions of law, including

27  interpretation of the bankruptcy code and are reviewed *de novo*.

28  Smith v. Rojas (In re Smith), 435 B.R. 637, 642 (9th Cir. BAP

2010). The liquidated amount of a particular claim is a factual finding reviewed for clear error. <u>In re Loya</u>, 123 B.R. 338, 340 (9th Cir. BAP 1991); <u>Nicholes v. Johnny Appleseed (In re Nicholes)</u>, 184 B.R. 82, 85 (9th Cir. BAP 1995).

The term "debt" means liability on a claim. Section 101(12). The term "claim" means ". . . right to payment . . ." Section 101(5)(A). Thus there is no "unsecured debt" unless the creditor has a right to payment. <u>Free v. Malaier (In re Free)</u>, 542 B.R. 492, 496 (9th Cir. BAP 2015). Both "debt" and "claim" are terms used by Congress and the courts in determining eligibility for Chapter 13 relief.

There is no dispute here that Olivia's claim is unsecured. The dispute arises because Ethan contends his Motion to Vacate the Renewed Judgment raises enough issues to dispute both liability and whether Olivia's claim is contingent and unliquidated. The court will examine these issues next.

2. <u>Olivia's claim is non-contingent.</u>

A claim is non-contingent if "it is based on and arises from events that occurred entirely pre-petition." <u>Loya</u>, 123 B.R. at 340; <u>Nicholes</u>, 184 B.R. at 88. If all events giving rise to the alleged liability occurred pre-petition, the claim is non-contingent. <u>Fostvedt v. Dow (In re Fostvedt)</u>, 823 F.2d 305, 306-7 (9th Cir. 1987). A contingent debt is "one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor. (Citations omitted). Where a contract was entered into by parties who did not contemplate

that any further act had to be completed in order to trigger contractual liability, then such liability would not be contingent." *Id.* at 306-07. The fact that a claim has not been reduced to judgment does not render it contingent. <u>Nicholes</u>, 184 B.R. at 88 citing <u>In re Dill</u>, 30 B.R. 546, 549 (9th Cir. BAP 1983) aff'd 731 F.2d 629 (9th Cir. 1984). Even a bona fide dispute over liability does not make a debt contingent. <u>Nicholes</u>, 184 B.R. at 88, citing <u>Dill</u>, 30 B.R. at 549.

All events giving rise to Olivia's claim occurred pre-petition. The original MSA was made part of a dissolution order in 2007. Olivia filed an Application to Renew the Judgment within the ten year period while that judgment was valid. After the Application to Renew was filed, Ethan filed his Motion to Vacate the Renewed Judgment raising numerous defenses to the amount of the judgment. But Ethan's motion did not make his liability on the judgment contingent.

Under California law, Olivia's filing of the Application to Renew actually renewed the judgment. Cal. Civ. Proc. Code § 683.120(b)(Deerings 2018); 683.150(a)(Deerings 2018). The Motion to Vacate does not invalidate the judgment but asks the court to vacate the renewed judgment. Cal. Civ. Proc. Code § 683.170; <u>Marriage of Thompson</u>, 41 Cal. App. 4th 1049, 1057; 48 Cal. Rptr. 2d 882 (Cal. Ct. App. 1996). When Olivia filed the Application to Renew the Judgment, the judgment was renewed for the dollar amounts included in her application. So on the petition date, no contingencies to the claim remained. To be sure, Ethan now contests liability but that does not change the status of Olivia's claim to contingent. See <u>Nicholes</u> and <u>Dill</u>.

3. <u>Olivia's claim is liquidated for eligibility purposes.</u>

In the Ninth Circuit, a debt is liquidated for purposes of calculating Chapter 13 eligibility if the amount of the debt is readily determinable. <u>Slack v. Wilshire Ins. Co. (In re Slack)</u>, 187 F.3d 1070, 1073-75 (9th Cir. 1999); <u>Guastella v. Hampton (In re Guastella)</u>, 341 B.R. 908, 916 (9th Cir. BAP 2006). In <u>Slack</u> the Ninth Circuit also held:

> Whether the debt is subject to "ready determination" will depend on whether the amount is easily calculable or whether an extensive hearing will be needed to determine the amount of the debt, or the liability of the debtor. (Citations omitted). Therefore, the mere assertion by the debtor that he is not liable for the claim will not render the debt unliquidated for the purposes of calculating eligibility under § 109(e). <u>Slack</u>, 187 F.3d at 1074.

Post-petition events do not change the debt limit analysis. <u>Slack</u>, 187 F.3d at 1072. Eligibility should normally be determined by the debtor's originally filed schedules checking only to see if the schedules were made in good faith. <u>Scovis v. Henrichson (In re Scovis)</u>, 249 F.3d 975, 982 (9th Cir. 2001). A debt can be readily ascertainable "even though liability on the debt had not been finally decided." *Id.*, citing <u>Slack</u>, 187 F.3d at 1074-75. The trustee has not argued here that there is any bad faith by the debtor in preparing his schedules. The Ninth Circuit BAP has urged that the bankruptcy court must determine whether the debts in question are subject to ready determination and whether computation of the amount due is a simple matter. <u>Nicholes</u>, 184 B.R. at 91. If they are not readily determinable,

then they are unliquidated and excluded from the eligibility tally. *Id.* Those determinations depend on an analysis of the facts. *Id.*

The facts here show the claim is liquidated. On the date of the filing of the petition, Olivia had filed the Application to Renew the Judgment setting forth specific amounts due under the judgment. Ethan significantly disputes some of those amounts. But disputes as to the debtor's liability for a debt does not render a debt unliquidated unless the dispute precludes the ready determination of the debt. Ho v. Dowell (In re Ho), 274 B.R. 867, 873 (9th Cir. BAP 2002). In Ho for example, there were pre-petition allegations of the debtor's liability for contractual and tort claims, but there was no judgment. There, the dispute itself brought into question the debtor's liability and what portion of the contract for which the debtor could have been found responsible. No such facts are present here. Ethan may contend he is not responsible for the entirety of the debt Olivia asserts. Indeed, there may be substantial defenses to enforcement of the judgment. But on the date of the petition, that judgment was entered. Under California law, as discussed in the previous section, the judgment was liquidated when Olivia filed the renewal application. In the end, this court need not engage in a lengthy or complicated hearing to determine eligibility.

Ethan's claimed setoff does not change the analysis. The right of setoff — even if it exceeds the amount and therefore negates the amount owed a creditor — does not make a liquidated debt unliquidated. Sylvester v. Dow Jones and Co. (In re

Sylvester), 19 B.R. 671, 672 (9th Cir. BAP 1982); Quintana v.
IRS (In re Quintana), 107 B.R. 234 (9th Cir. BAP 1989), aff'd
915 F.2d 513, 517 (9th Cir. 1990) [Counterclaim cannot be used
to set off debt for a Chapter 12 debtor to determine
eligibility].

The cases Ethan cites on liquidated claims for eligibility
purposes either do not support his position or can be easily
distinguished. In In re Wenberg, 94 B.R. 631 (9th Cir. BAP 1988)
aff'd 902 F.2d 768 (9th Cir. 1990) when the bankruptcy was filed
there was a pre-petition judgment for declaratory relief against
the debtor that did not liquidate the claim. The bankruptcy
court conducted hearings examining the claim and determined that
liability for attorney's fees and costs could be liquidated.
This court need not go as far here as the renewed judgment
liquidated the amounts Olivia claims are owed in this case. In
fact, in Wenberg, the bankruptcy appellate panel rejected a
similar argument raised by Ethan here that disputes by the
debtor as to the amount of the claim asserted should be
considered by the court in finding a claim unliquidated. The
Wenberg court said "such final determinations are more
appropriately addressed in a proceeding to determine the
allowance of a specific claim under § 502 and should be separate
from the application of § 109(e)." Id. at 635.

Smith v. Rojas (In re Smith), 435 B.R. 637 (9th Cir. BAP
2010) is easily distinguishable. The trial court there had
before it the question as to how to count both fully unsecured
and partially secured claims encumbering the debtor's primary
residence for Chapter 13 eligibility purposes. The trial court

ruled that partially secured claims encumbering the debtor's residence should not be counted. The bankruptcy appellate panel affirmed. There is no issue here about how to count claims. All the claims Olivia asserts are unsecured. The appellate panel opinion in Smith cited Slack in responding to the debtor's argument that post-petition events ("stripping liens") could not be counted in an eligibility determination. The appellate panel analyzed Slack and opined the question was whether a claim was sufficiently non-contingent and unliquidated, which was the case in Smith. *Id.* at 646.

The earlier cases Ethan cites on the issue are also unpersuasive. In In re King, 9 B.R. 376 (Bankr. D. Or. 1981) the debtors scheduled two large debts which were disputed. The bankruptcy court in King reasoned that the term "claim" is broader than the term "debt." *Id.* at 378. Without a finding of liability for the claim, the King court opined there could be no "debt." King is inconsistent with Sylvester which held that where the amount of debt was readily ascertainable the fact that the debt was disputed would not preclude its use in determining eligibility under § 109(e).

In re Lambert, 43 B.R. 913 (Bankr. D. Utah 1984) relied heavily on the reasoning of King in concluding that a disputed debt is unliquidated. *Id.* at 915. Two significant facts put the continued vitality of Lambert in this circuit in doubt. First, the Lambert decision was distinguished and its validity questioned by the Ninth Circuit Bankruptcy Appellate Panel in In re Quintana. Second, Lambert is factually distinguishable because there was no pre-petition judgment in Lambert but rather

a dispute regarding a settlement between the debtors and the claimant which was to be decided in the bankruptcy court in an adversary proceeding.

Whether the court relies only on bankruptcy schedules filed here as in <u>Scovis</u> or examines other facts as in <u>Loya</u> or <u>Guastella</u>, Olivia's claim against Ethan was liquidated for purposes of a Chapter 13 eligibility determination.[6] The court stresses that it is by no means determining that Olivia's claim should be allowed as filed. That is a separate issue subject to separate state court proceedings.

4. <u>Finding Ethan ineligible for Chapter 13 relief is consistent with the bankruptcy code.</u>

Ethan's final argument relies on his interpretation of the "policy" of Chapter 13. Ethan urges that he is a small business man and cannot afford the cost of a Chapter 11 reorganization. Also, because of the "absolute priority rule" it will be difficult to confirm a Chapter 11 Plan. Any doubt as to his eligibility, Ethan urges should be resolved in his favor so he can receive a fresh start.

The Chapter 13 eligibility threshold of $394,725.00 "non-contingent, liquidated, unsecured debts" is a specific congressional directive. This court is not empowered to change that statutory debt limit. The Ninth Circuit Bankruptcy Appellate Panel declined the invitation to challenge the debt

---

[6] <u>Slack</u>, <u>Wenberg</u>, and <u>Guastella</u> all examine Chapter 13 debt limits with partially concluded state court proceedings existing before bankruptcy. But in all cases, either the state court record (<u>Slack</u> and <u>Guastella</u>) or the bankruptcy judge (<u>Wenberg</u>) marshalled enough facts to establish debts to calculate Chapter 13 eligibility.

threshold during the middle of the "housing crisis." The appellate panel in <u>Smith</u>, a case cited by Ethan here, summarized the Chapter 13 debt limit issue succinctly:

> Chapter 13 debt limits are mandated by statute. Bankruptcy courts are required to apply the provisions of the Bankruptcy Code as they are written. To the extent the existing Chapter 13 debt limits are too low to provide Chapter 13 relief to homeowners impacted by the current economic climate, that is a matter within the purview of Congress. <u>Smith</u>, 435 B.R. at 649.

### CONCLUSION

For the foregoing reasons, the Chapter 13 Trustee's Motion to Dismiss this Chapter 13 case on the grounds that the debtor, Ethan Aparicio, is ineligible shall be and hereby is GRANTED. The court will stay the effectiveness of this order until September 6, 2018, so Ethan can review his bankruptcy options. A separate order shall issue.

**Dated:** Aug 23, 2018                **By the Court**

René Lastreto II, Judge
United States Bankruptcy Court

17

**Instructions to Clerk of Court**
**Service List - Not Part of Order/Judgment**


The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below.  The Clerk of Court will send the Order via the BNC or, if checked __X__, via the U.S. mail.

ETHAN NICOLAS APARICIO
14613 Coneflower Drive
Bakersfield CA 93314

Michael H. Meyer
PO Box 28950
Fresno CA 93729-8950

Office of the U.S. Trustee
United States Courthouse
2500 Tulare Street, Room 1401
Fresno CA 93721

Jamie D. Hanawalt
4375 Jutland Dr
San Diego CA 92117

Leonard K. Welsh
4550 California Ave 2nd Fl
Bakersfield CA 93309